Daniel E. GARRIS, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 6182.

District of Columbia Court of Appeals.

Argued Aug. 23, 1972.

Decided Oct. 2, 1972.

Rehearing Denied Oct. 20, 1972.

Stephen S. Millstein, Washington, D. C., appointed by this court, for appellant.

David M. Bullock, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Lawrence P. Lataif, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and FICKLING and GALLAGHER, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted after a jury trial of one count of carrying a pistol without a license after having been convicted of a felony, D.C.Code 1967, § 22–3204. He contends that the Assistant United States Attorney's misstatement to the jury concerning appellant's knowledge of partially loaded pistols, coupled with the failure of the court to give more explicit curing instructions, prejudiced his rights to a fair trial and constituted reversible error.[1] We affirm.

Appellant and two companions were driving north on South Capitol Street at approximately 1:15 on the morning of May 26. They were observed by two officers who were stopped for a red light at the intersection of Martin Luther King, Jr. Avenue and South Capitol Street. The individual in the rear seat was noticed to slouch when he saw their patrol car. The officers proceeded south through the intersection, then, making a U-turn, they followed appellant's vehicle up the entrance ramp and onto northbound Route 295. Because of a "wired-on" license plate and a defective taillight, the officers requested a stolen vehicle check from "WALES" (Washington Area Law Enforcement System); however, before they received a reply they stopped the vehicle to check appellant's operator's permit and vehicle registration. He produced a valid operator's permit but did not have the proper registration papers. During the examination of the papers, the officers received a report that the vehicle had been reported stolen.[2] Appellant and his two companions were arrested, searched, and placed in a police wagon. Searching the vehicle, the officers found one revolver under the driver's seat and two others under the passenger's seat.

During the preliminary hearing, the Assistant United States Attorney elicited testimony from the officer to the effect that two of the three guns were not fully loaded. The same Assistant represented the Government at a motion to suppress[3] and at trial. Appellant's counsel, in his opening argument at trial, alluded to the fact that the guns were not fully loaded in an attempt to show that the weapons and

---

1. Appellant's contention that the vehicle was unlawfully stopped and detained in violation of his fourth amendment rights is without merit. *See* Palmore v. United States, D.C.App., 290 A.2d 573 (1972). Appellant's further contention that the court erred in failing to allow appellant to inquire into the nature of police procedure followed in cases of routine spot checks is similarly lacking in merit. Mincy v. District of Columbia, D.C.App., 218 A.2d 507 (1966). No foundation was laid for such inquiry. *Cf.* Hill v. United States, 135 U.S.App.D.C. 233, 418 F.2d 449 (1968).

2. The vehicle had been reported stolen; however, it had been recovered and was being operated with the owner's consent.

3. Appellant contends that the trial judge abused his discretion when he failed to treat the motion to suppress as conceded due to the Government's failure to file a points and authorities memorandum as required by Super.Ct.Crim.R. 47–I(b) and (c). As appellant notes, that decision is committed to the sound discretion of the trial judge and neither the record nor cases cited by appellant indicate an abuse of that discretion.

the vehicle had been used in the commission of a crime during the time the car had been stolen. In his closing argument the same Assistant United States Attorney suggested strongly to the jury that the only way appellant's counsel could have learned about the condition of the weapons was for the appellant to have told him. Appellant's counsel immediately objected, explaining to the judge (and jury) that he had learned of the condition of the revolvers from the Government's own witness at the preliminary hearing prior to trial. The trial judge replied, "Very well. You may proceed."

In his own closing argument, appellant's counsel again pointed out to the jury how he had obtained the information and the significance of the Assistant United States Attorney's misstatement. In his charge to the jury, the trial judge did not instruct explicitly on the point, instructing only generally that statements and arguments of counsel are not evidence.

■ We agree that the prosecutor's misstatement was erroneous; however, we do not find substantial prejudice, which is necessary in order to reverse.[4]

In Gaither v. United States it was stated that:

The applicable test for prejudice is whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. [134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969); citations omitted.]

■ In the instant case certain steps were taken to mitigate the effects of the error. As soon as the prosecutor made the misstatement, appellant's counsel objected, stating precisely how he had obtained the information about the condition of the guns. The judge at least tacitly sustained that objection and the prosecutor did not refer to appellant's counsel's opening argument again. In addition, appellant's counsel devoted a substantial portion of his closing argument to reiterating to the jury what the prosecutor had said, the significance of the statement, and how the statement was clearly erroneous. The prosecutor did not mention the misstatement in his rebuttal argument, which followed appellant's explanation.[5]

■ Finally, "it is generally held that whether improper conduct of Government counsel amounts to prejudicial error depends, in good part, on the relative strength of the Government's evidence of guilt." Jones v. United States, 119 U.S. App.D.C. 213, 214 n. 3, 338 F.2d 553, 554 n. 3 (1964). In the instant case there was strong evidence of guilt. Kenhan v. United States, D.C.App., 263 A.2d 253 (1970).

We think the correction of the prosecution by defense counsel, together with the judge's charge, sufficiently repaired the damage so that the prosecutor's misstatement does not constitute reversible error. The judgment of the trial court therefore is

Affirmed.

4. Cross v. United States, 122 U.S.App.D.C. 283, 353 F.2d 454 (1965).

5. In a case where, as here, the prosecutor realized he had made a misstatement, it would be sound policy for him to join in the defense's motion for a curing instruction.