Bryan EASLEY, Appellant,

v.

UNITED STATES, Appellee.

Sean C. KELLY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 82–883, 82–1305.

District of Columbia Court of Appeals.

Argued March 21, 1984.

Decided Oct. 2, 1984.

Brian P. Jenny, Washington, D.C., appointed by the court, for appellant in No. 82-883.

R. Scott Goldman, Washington, D.C., appointed by the court, for appellant in No. 82-1305.

Bruce Z. Marshack, Asst. U.S. Atty., Washington, D.C., with whom Joseph F. diGenova, U.S. Atty., Michael W. Farrell, and Wallace H. Kleindienst, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before BELSON, Associate Judge, KERN,* Associate Judge, Retired, and WALTON,** Associate Judge, Superior Court of the District of Columbia.

BELSON, Associate Judge:

A jury convicted appellant Easley of possession of an unregistered weapon, D.C. Code § 6-2311 (1981), possession of ammunition for an unregistered weapon, id. § 6-2361, and receiving stolen property, id.

§ 22-2205 (repealed after dates relevant to this case, 29 D.C.Reg. 3995 (1982)). The jury convicted appellant Kelly of the two possession charges and of petit larceny, D.C.Code § 22-2202 (1981). Both Easley and Kelly argue that the evidence was not sufficient to sustain the possession charges. We agree and reverse the convictions for possession of the unregistered gun and the ammunition. We affirm their respective convictions of receiving stolen property and petit larceny.

Plainclothes police officers stationed in Georgetown saw three men—Easley, Kelly, and codefendant Richardson—approach an underground parking garage one evening. Because there had been five armed robberies of Georgetown parking garages during the previous 6 weeks, the officers watched the men carefully. One of the three stayed outside, looking up and down the street, while the other two went into the garage. A few minutes later, the two rejoined the man outside, and all went to a car in which the fourth codefendant, Linda Johnson, was waiting. Kelly and Easley got into the back seat, Richardson into the front. The officers saw Richardson bend down just after he got into the car. Johnson began to drive away. The officers blocked her car, ordered the appellants out, and frisked them. One officer peered in through the front windshield with the aid of a flashlight and saw two inches of a gun butt protruding from underneath the middle of the front passenger seat. The officer retrieved the gun. It held five rounds of ammunition. Police later found that the gun was not registered.

The officers arrested appellants and searched them. Kelly was wearing three coats, one of which he admitted at trial he had stolen from a car in the garage. He said that Easley and Richardson had not been involved in the theft.

---

* Judge Kern was an Associate Judge at the time of argument. His status changed to Associate Judge, Retired on May 25, 1984.

** Sitting by designation pursuant to D.C. Code 11-707(a) (1981).

After a hearing, the trial judge denied Kelly's and Johnson's motions to suppress the gun and ammunition.[1] The judge also denied the motions for judgment of acquittal that all four defendants made at the close of the government's case and at the close of all the evidence.

■ Appellants argue that the government failed to prove they constructively possessed the loaded gun found under the front passenger seat, so the trial judge should have granted their motions for judgment of acquittal. In order to prevail, appellants must show that "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt." *Curley v. United States*, 81 U.S. App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

■ Constructive possession is composed of two elements: "knowledge of the presence of the pistol or ammunition *and* the existence of dominion and control over them." *Hill v. District of Columbia*, 264 A.2d 145, 146 (D.C.1970) (emphasis in original). *Accord United States v. Hubbard*, 429 A.2d 1334, 1338 (D.C.) (constructive possession of narcotics), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). The government must adduce sufficient evidence to prove both elements beyond a reasonable doubt.

■ The government did not provide evidence from which the jury could reasonably have concluded that appellants knew the gun was in the car. Both denied knowledge. The government did not show that appellants would have had to have seen the gun before its recovery. The police officer who found the gun said that two inches of the gun's ·handle were visible. But the officer was looking through the front windshield, and was using a flashlight. Appellants were sitting in the back seat in the dark. The front seat was a bench seat, rather than two bucket seats, which further diminishes the likelihood that appellants saw the gun. Two officers testified that they saw Richardson bend over after he sat down in the front passenger seat. He may have been putting the gun under the seat. But in our view, the mere fact that Richardson bent over is too weak a reed to support a finding that appellants knew the gun was present.

This case is distinguishable from *Johnson v. United States*, 309 A.2d 497 (D.C. 1973), *cert. denied*, 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974), in which we held that there was sufficient evidence to support the [defendant's] conviction for carrying a pistol without a license. The opinion focused mainly on whether Johnson had access to the pistol, but it considered briefly his knowledge of the gun's presence in the car in which he and his codefendants were riding. *Johnson* and a companion case, *Garris v. United States*, 295 A.2d 510 (D.C.1972) (appeal by Johnson's codefendant), set out the facts. There, after the car in which appellants and a third person were riding was stopped, three guns were found inside the car. One gun lay beneath the driver's seat and the other two were found under the front passenger's seat, one close to the front and one closer to the rear. Appellant Johnson, the only passenger in the back seat, was charged with carrying only the pistol nearest the back seat. Police saw appellant Johnson slouch down as the squad car approached. In the instant case, there was just one gun in a car carrying four people. Neither Easley nor Kelly bent down as officers approached. The facts that supported an inference of knowl-

---

1. Easley appeals the denial of the suppression motion[s]. Easley did not join the suppression motion below, however, so he has waived the issue. Super.Ct.Crim.R. 12(b)(3) and 12(d). Kelly has not raised the issue on appeal. Even if he had done so, and even if Easley had joined the trial motion, we could not consider the merits because neither appellant has standing.

*See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (passengers in a car who own neither the car nor the property seized cannot challenge a search of the car); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (such passengers lack standing even if they are charged with possession of the seized articles).

edge in *Johnson* are not present in our case.

◼ The government argues that the jury could have inferred appellants' knowledge and their ability to control the gun from the evidence that the four codefendants had just committed a crime together immediately before the police found the gun. We have adopted such reasoning in some constructive possession cases. *E.g., United States v. Hubbard, supra,* 429 A.2d at 1338 (quoting *United States v. Staten,* 189 U.S.App.D.C. 100, 107, 581 F.2d 878, 885 (1978)): "[W]hile an accused's mere presence at the scene of the crime, his proximity to the drugs [or gun] or his association with one in possession do not in themselves substantiate a finding of constructive possession, nevertheless, 'presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part.'" In *Hubbard,* the defendant had engaged in two drug transactions before the police seized a bag of narcotics from which her codefendant had taken packets of heroin; she was held to have constructively possessed the contents of the bag, although police had not seen her touch the bag or the drugs in it.

◼ This joint-criminal-operation theory does not avail the government in the present case because there was no evidence that any of the defendants used the gun during the larceny. The government must show a connection between the seized article and the criminal venture in order to enable the jury reasonably to infer the venturers' knowledge of the article. In *Porter v. United States,* 282 A.2d 559 (D.C. 1971), two people observed either Porter or his codefendant creating a disturbance in a bar and carrying a gun. Thereafter, police officers found a gun under the front seat of the car occupied by Porter and his codefendant. We held that because at least two observers testified "that either [Porter] or [his codefendant] had a gun as a result of the disorder, a valid inference could be drawn that [Porter] also knew that [his codefendant] had a gun if he himself was not the one in possession." *Id.* at 560. The government in the instant case presented no evidence to the jury that any observer saw Easley, Kelly, or Richardson carrying a gun during the incident in the garage. *Cf. also United States v. Bethea,* 143 U.S.App.D.C. 68, 71, 442 F.2d 790, 793 (1971) (guns found in defendant's car are not relevant under criminal-venture theory when defendants are accused of possessing narcotics).

Because the government failed to adduce sufficient evidence of one element of constructive possession, knowledge, we need not consider the sufficiency of the evidence of the other, dominion and control.

◼ Easley argues that there was insufficient evidence to support his conviction for receipt of stolen property. This contention is meritless; there was ample evidence that he at least aided and abetted Kelly's admitted larceny.

The convictions for possession of the gun and of the ammunition in the gun are reversed. The convictions for receiving stolen property and for petit larceny are affirmed. The cases are remanded to the Superior Court for resentencing.[2]

*So ordered.*

---

**2.** Kelly was given an indefinite sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1982), pursuant to his convictions on the two possession charges and petit larceny. Easley was given concurrent 1-year sentences on the two possession charges and on the receipt of stolen property charge, and 90 days on the release papers.